1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CARL McCEE FOUNTAIN,

11              Petitioner,              No. CIV S-04-2350 GEB DAD P

12        vs.

13   JAMES YATES, Warden,

14              Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1997 judgment of

18   conviction entered in the Yuba County Superior Court on charges of lewd and lascivious conduct

19   with a child under fourteen years of age, first degree burglary, and furnishing alcohol to a minor,

20   with findings that petitioner engaged in substantial sexual conduct with the victim, that he

21   befriended the victim for the purpose of conducting lewd and lascivious acts, and that he

22   committed the lewd and lascivious acts in the course of committing a burglary.  Petitioner seeks

23   relief on the grounds that: (1) his trial and appellate counsel rendered ineffective assistance; (2)

24   the evidence was insufficient to support his conviction on the charge of burglary because he

25   mistakenly believed the victim was over eighteen years of age and he was too intoxicated to enter

26   the victim's house with the intent to commit a felony; and (3) his sentence constitutes cruel and

1

unusual punishment.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendant Carl McCee Fountain was convicted by a jury of lewd and lascivious conduct with a child under 14 years of age (Pen. Code, § 288 (a) – count I [hereafter all section references to an undesignated code are to the Penal Code]), first degree burglary (§§ 459, 460 – count II), and furnishing alcohol to a minor (Bus. & Prof. Code, § 25658a – count III).  As to count I, the jury also found that defendant engaged in substantial sexual conduct with the victim (§ 1203.066, subd. (a) (8)), that he befriended the victim for the purpose violating [sic] section 288, and that he committed the section 288 violation in the course of committing a burglary (§ 667.61, subd. (d)(4)).

In a trial by court, defendant was found to have two prior convictions which constituted strikes (§§ 667, subds. (b) - (I), 1170.12, subds. (a) - (e)), one for battery with serious bodily injury (§ 243, subd. (d)), incurred in juvenile proceedings, and the other in adult court for robbery (§ 211).

Sentenced to state prison for 80 years to life, defendant appeals. . . .

* * *

In 1997, 13-year-old LeeAnn lived with her mother in an apartment next door to a bar where her mother worked.  On April 1, LeeAnn was upset after breaking up with her boyfriend and went to the bar to talk with her mother.  Her mother, who was busy with customers, spoke with LeeAnn for a few minutes and told her to go home.

Instead of going home, LeeAnn took a walk.  As she walked, a convertible, driven by defendant, drove up beside her.  Defendant told LeeAnn he thought she was someone else and then asked her why she was crying.  She told him that she had just broken up with her boyfriend.  Defendant told her that his name was "Caro," that he was having problems with his girlfriend, that today was his 21st birthday, and that he drank when he had problems.  Defendant asked LeeAnn her age and she told him she was 13.  He said she looked 17 or 18, but she repeated that she was 13.  Defendant told LeeAnn he needed to someone to have a drink with and she got into the car with him.

---

[1]  The following summary is drawn from the July 12, 2000, opinion by the California Court of Appeal for the Third Appellate District, at pgs. 2-6, lodged on February 24, 2005, as an exhibit to respondent's answer (lodged document No. 5).

Defendant drove to J&J Liquors where he purchased a half-pint of vodka for her and a 40-ounce bottle of beer for himself. By questioning LeeAnn, defendant learned she lived with her mother, and that no one was at her home. Defendant asked if they could go to her home and she replied "'Yes.'"

At LeeAnn's apartment she drank the vodka and he drank the beer. Although not sure, LeeAnn thought she "finished" the bottle of vodka. Defendant asked if she wanted more and she said she did not think so. Defendant told her, "'Yeah, you need another bottle.'" Defendant helped LeeAnn get off the couch, she felt dizzy and had some trouble walking. As they again drove to J&J Liquors, LeeAnn told defendant she was "really feeling the effects of the vodka." He told her "that was good."

Defendant purchased another bottle of vodka and returned with LeeAnn to her apartment. LeeAnn had difficulty unlocking the door and defendant had to assist her. Inside the apartment, LeeAnn told defendant she felt "[v]ery dizzy, very sleepy." LeeAnn took one more drink of vodka and the next thing she recalled was defendant helping her off the couch and suggesting she would be more comfortable in the bedroom. Defendant guided LeeAnn into the bedroom where she "fell onto the bed."

Defendant removed her jeans and underwear. LeeAnn realized she was too intoxicated to stop defendant and asked if he was using a condom because "I don't know this man and because I couldn't get him off of me."

While defendant was with LeeAnn, Jacquelyn Rogers, a coworker of LeeAnn's mother and a neighbor, left the bar to go home. Rogers saw defendant's car, with which she was unfamiliar, in front of LeeAnn's apartment. Concerned, Rogers tried to call LeeAnn but received no response. Rogers than called LeeAnn's mother and told her of the vehicle. LeeAnn's mother asked Dennis Miller, a friend in the bar, to "check on" LeeAnn and gave him a key.

Miller entered LeeAnn's apartment and saw defendant, who was nude, withdraw his penis from LeeAnn's vagina. Miller exclaimed, "'What the hell are you doing?'" and told defendant that LeeAnn was "'only a little girl, 13 years old.'" Defendant said, "'She told me she was 21.'" Defendant put on his clothes and fled.

Crystal B. testified that in July 1993, when she was 14 years old and had known defendant approximately two months, he drove to her home for the purpose of taking her to his mother's house to work and spend the night. When Crystal's younger brother got into the car with them, defendant told him there was not room enough because he was picking up other people. Defendant left with Crystal and drove to J&J Liquors, which was previously Circus

Liquors.  He asked Crystal if she wanted anything to drink and she replied, "'Okay.'" He bought a bottle of wine and then drove to a location across the street from where Crystal's cousin lived.

Crystal, who was not an experienced drinker, drank about one-half of the bottle of wine and became drowsy and light-headed.  She told defendant she did not want any more; however, he told her to go ahead and drink it all and kept trying to get her to keep drinking.  Crystal leaned back, "drifted off" and awoke when defendant began pulling on her clothes.  He had his pants down and was saying, "'Just give me five minutes.'" Although Crystal did not want to have sex with defendant, he forced her to engage in sexual intercourse.  Crystal reported the incident to her cousin and then to the police.  However, she and her mother decided going through a trial would be too stressful, so they declined to pursue the matter.

Defendant testified, admitting having been convicted of robbery in 1994.  Defendant claimed he hardly knew Crystal and denied ever buying her liquor or having sexual intercourse with her, let alone raping her.

As to the incident with LeeAnn, defendant admitted he stopped his car near her, but did so because he thought she was someone else.  He did not drive off because she seemed depressed.  She got into his car because she needed someone to talk with.  LeeAnn told him she drank and he drove to the liquor store where he purchased vodka for her and beer for himself.  LeeAnn suggested they go to her home and defendant agreed, thinking they were going there to drink.  Inside LeeAnn's apartment they talked and drank.  They later went back to the liquor store because LeeAnn insisted on having more alcohol.

After buying more vodka, they returned to LeeAnn's apartment and again talked.  LeeAnn told him she wanted to show him something in the bedroom, so they entered and sat on the bed and talked.  They began kissing and eventually had sexual intercourse.  Defendant denied intending to have sex with LeeAnn either when he picked her up or when he want to her apartment.

Petitioner filed a timely appeal of his conviction in the California Court of Appeal for the Third Appellate District, in which he claimed that the trial court erred by: (1) finding his prior juvenile adjudication was a strike and using it as such in sentencing; (2) admitting evidence of an uncharged offense; (3) imposing a term of seventy-five years to life on count I; and (4) sentencing him under both sections 667.61 and 667 of the California Penal Code.  (Opinion at 2.) In a partially published opinion, the state appellate court agreed with petitioner's argument that

4

the trial court erred by finding that his prior juvenile adjudication constituted a strike under

California's Three Strikes sentencing law and remanded for further sentencing proceedings.

(Resp't's lodged document No. 5 at 6-13.)  In all other respects, however, petitioner's judgment

of conviction was affirmed.  (Id. at 2.)

On August 16, 2000, petitioner filed a petition for review in the California

Supreme Court, claiming that his federal due process rights were violated by the trial court's

admission of evidence of a prior uncharged crime.  (Resp't's lodged document No. 6.)  That

petition was summarily denied by order dated October 25, 2000.  (Resp't's lodged document No.

7.)

On remand, petitioner was re-sentenced to fifty years to life for lewd and

lascivious conduct with a minor and five years for the prior serious felony conviction, for a total

sentence of fifty-five years to life in prison.  (Resp't's lodged document No. 11 at 3.)  On May

30, 2001, petitioner filed another appeal in the California Court of Appeal for the Third

Appellate District, claiming that his sentence was improperly doubled under California's Three

Strikes law and that his sentence constituted cruel and unusual punishment.  (Resp't's lodged

document No. 8.)  That appeal was rejected in a reasoned decision filed August 28, 2002.

(Resp't's lodged document No. 11.)  On October 8, 2002, petitioner filed a petition for review in

the California Supreme Court, raising the same arguments.  (Resp't's lodged document No. 12.)

That petition was summarily denied by order dated November 13, 2002.  (Resp't's lodged

document No. 13.)

On January 6, 2003, petitioner filed a petition for writ of habeas corpus in the

Yuba County Superior Court, claiming that: (1) he received ineffective assistance of trial and

appellate counsel; (2) the evidence admitted at trial was insufficient to support his convictions;

and (3) his sentence of fifty-five years to life constituted cruel and unusual punishment.

(Resp't's lodged document No. 14.)  That petition was denied in a reasoned decision dated

January 30, 2003.  (Resp't's lodged document No. 15.)

1    On April 30, 2003, petitioner raised the same claims in a petition for writ of

2    habeas corpus filed in the California Court of Appeal.  (Resp't's lodged document No. 16.)  That

3    petition was summarily denied by order dated June 5, 2003.  (Id.)  On July 9, 2003, petitioner

4    raised the same claims again in a petition for writ of habeas corpus filed in the California

5    Supreme Court.  (Resp't's lodged document No. 17.)  That petition was summarily denied by

6    order dated March 17, 2004.  (Resp't's lodged document No. 18.)

7                                      ANALYSIS

8    I.  Standards of Review Applicable to Habeas Corpus Claims

9                A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

10   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

11   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

12   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

13   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

14   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

15   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

16   (1972).

17               This action is governed by the Antiterrorism and Effective Death Penalty Act of

18   1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

19   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

20   habeas corpus relief:

21                     An application for a writ of habeas corpus on behalf of a
                      person in custody pursuant to the judgment of a State court shall
22                    not be granted with respect to any claim that was adjudicated on
                      the merits in State court proceedings unless the adjudication of the
23                    claim -

24                          (1) resulted in a decision that was contrary to, or involved
                      an unreasonable application of, clearly established Federal law, as
25                    determined by the Supreme Court of the United States; or

26   /////

                                          6

1            (2) resulted in a decision that was based on an unreasonable
2   determination of the facts in light of the evidence presented in the
    State court proceeding.

3   28 U.S.C. § 2254(d).  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v.</u>

4   <u>Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

5           The court looks to the last reasoned state court decision as the basis for the state

6   court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

7   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

8   federal habeas court independently reviews the record to determine whether habeas corpus relief

9   is available under section 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);

10  <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

11  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

12  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

13  de novo.  <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160,

14  1167 (9th Cir. 2002).

15  II.  <u>Petitioner's Claims</u>

16      A.  <u>Insufficient Evidence</u>

17          Petitioner claims that there was insufficient evidence to support his conviction on

18  the burglary charge.  Specifically, he argues that he did not harbor the intent to commit a felony

19  at the time he entered the victim's apartment because of his level of intoxication and his

20  mistaken belief that the victim was over the age of eighteen. (Supplement to Petition,

21  Memorandum of Points and Authorities, filed November 2, 2004 (P&A) at 42; Traverse at 14.)

22          Petitioner's claim of insufficient evidence was raised for the first time in an

23  application for a writ of habeas corpus filed in the Yuba County Superior Court.  The Superior

24  Court rejected the claim, reasoning as follows:

25        . . . petitioner's arguments, to have any arguable significance,
    would need to be based on intoxication <u>prior to</u> entering into the
26  premises where he unlawfully had sexual intercourse with his

minor victim.  Such a fact pattern is not demonstrated by the materials submitted in support of the petition.  While this record supports the proposition that petitioner had been drinking prior to the subject incident (Exhibit B, p. 2, para. 11), the submitted record as a whole suggests that he was not intoxicated until after he and the minor drank the alcohol he purchased (See, esp. Exhibit B, p. 2, para. 15; Exhibit D 344:8-14, 20-22, 346: 18-21.)  The answer *I was so drunk I – I don't know* as appears in Exhibit D, 347:10, comes in the narrative after the defendant had already been drinking with the victim at the scene of the crime and, in fact, after he had returned with her to the liquor store to buy more alcohol. (Exhibit D, 345: 5-23.)  It may or may not be that the defendant was intoxicated <u>before</u> he picked up the minor in his automobile, but such has not been established on the showing made in this petition.  Relief based on the intoxication-related grounds is therefore **denied**.

(Resp't's lodged document No. 15 at 2-3.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  <u>See also</u> <u>Prantil v. California</u>, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question under <u>Jackson</u> is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  <u>Chein v. Shumsky</u>, 373 F.3d 978, 982 (9th Cir. 2004) (quoting <u>Jackson</u>, 443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.  <u>Id.</u>

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

1  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

2  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

3  reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

4  fact could draw conflicting inferences from the evidence, the court in its review will assign the

5  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

6  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

7  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

8  Cir. 1991).  "The question is not whether we are personally convinced beyond a reasonable

9  doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."

10  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

11  sufficiency of the evidence in reference to the substantive elements of the criminal offense as

12  defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

13         In order to find petitioner guilty of burglary, the jury had to find that he intended

14  to commit a felony (in this case, lewd and lascivious conduct with a child under the age of

15  fourteen in violation of California Penal Code § 288) at the time he entered the victim's

16  apartment.  Cal. Penal Code § 459.  Petitioner's first argument is that he could not have harbored

17  such an intent because he believed LeeAnn was over eighteen years of age.  However, LeeAnn

18  testified that she told petitioner several times she was thirteen years old.  (Reporter's Transcript

19  on Appeal (RT) at 183.)  This testimony constituted sufficient evidence from which a reasonable

20  jury could conclude that petitioner knew the victim was younger than fourteen.  In any event, as

21  discussed below, a mistaken belief in the age of the victim is not a defense to a charge of

22  violating California Penal Code § 288.

23         Petitioner also argues that intoxication prevented him from forming the requisite

24  intent to commit the underlying felony.  He points to evidence in the record that he was

25  intoxicated both prior to and during the events that occurred in the victim's apartment.  (See

26  Traverse at 14; RT at 194 (victim testified petitioner was drinking beer in her apartment); RT at

9

346-47 (petitioner testified he was too drunk to remember whether he drank any more alcohol after he and the victim sat on her bed); RT at 340-41 (petitioner testified that earlier in the day he had consumed alcohol at a friend's house)).[2]  However, as noted by the California Superior Court, there was evidence in the record from which a rational juror could conclude that petitioner was not excessively intoxicated until after he purchased alcohol and drank it with the victim. Evidence that petitioner had consumed some alcohol earlier in the day does not overcome the jury's finding that petitioner was still capable of forming the requisite intent prior to entering the victim's apartment.

Viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was substantial evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner harbored the requisite intent to commit a felony when he entered the victim's apartment.  Because there was substantial evidence presented at trial to support petitioner's conviction on this charge, the state court's analysis of petitioner's claim is not "objectively unreasonable."  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to relief.[3]

B.  Cruel and Unusual Punishment

Petitioner contends that his sentence of fifty-five years to life under California's Three Strikes law constitutes cruel and unusual punishment because it is grossly disproportionate to the crimes of which he was convicted.  Petitioner raised this claim for the first time in the

/////

---

[2]  Petitioner has filed the declaration of this friend, Sharon Copeland, who declares that petitioner was drinking alcohol at her house on the day of the crimes and was "so intoxicated on the night in question, that it is hard for me to believe that he was even capable of knowing what he was doing."  (P&A, Ex. B at 2.)  Sharon Copeland did not testify at petitioner's trial and her declaration was signed in 2003.  No such evidence was introduced at petitioner's trial.

[3]  Petitioner does not appear to be arguing that the evidence was insufficient to support his conviction on the charge of committing lewd and lascivious conduct with a child under the age of fourteen.  If petitioner is making such a claim, it should also be denied.  There is overwhelming evidence in the record to support petitioner's conviction on this charge.

1   California Court of Appeal after he was re-sentenced.  The appellate court rejected this argument,

2   reasoning as follows:

3           As to defendant's claim under the federal Constitution, we note
        that in Harmelin v. Michigan, the court rejected a
4           disproportionality argument raised by Harmelin, who with no prior
        record, received a sentence of life without possibility of parole for
5           possession of 672 grams of cocaine. (footnote omitted).  If
        Harmelin's sentence was not disproportional under the federal
6           Constitution, given his lack of a prior record and that his offense
        involved no violence, then, a fortiori, the sentence of defendant
7           herein, who has a prior record of violence and has presently been
        convicted of child molestation, cannot be disproportional under the
8           federal constitution.

9   (Resp't's' lodged document No. 11 at 11.)

10          In  Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court

11  found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant

12  clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework

13  is the gross disproportionality principle, the precise contours of which are unclear and applicable

14  only in the 'exceedingly rare' and 'extreme' case."  Id. at 73 (citing Harmelin v. Michigan, 501

15  U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445

16  U.S. 263, 272 (1980)).  The Supreme Court in Andrade concluded that two consecutive

17  twenty-five years to life sentences with the possibility of parole, imposed under California's

18  Three Strikes law following two petty theft convictions with priors, did not amount to cruel and

19  unusual punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

20  sentence of twenty-five years to life imposed for felony grand theft under California's Three

21  Strikes law did not violate the Eighth Amendment).

22          Following the decision in Andrade the United States Court of Appeals for the

23  Ninth Circuit held that a third strike sentence of twenty-five years to life in prison for a third

24  shoplifting offense, a "wobbler" under state law[4], constituted cruel and unusual punishment.

25  _____

26          [4]  A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
    under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

                                        11

1   Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited

2   and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's

3   only prior period of incarceration had been a single one-year jail sentence.  Ramirez, 365 F.3d at

4   768-69.  Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), the court distinguished the

5   holding in Ramirez from the situation it confronted, finding that the petitioner in Rios had a

6   "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used

7   to enhance the petitioner's sentence had "involved the threat of violence."  Id. at 1086.

8           This court finds that in this case petitioner's sentence does not fall within the type

9   of "exceedingly rare" circumstance that would support a finding that his sentence violates the

10  Eighth Amendment.  Petitioner's current offense of conviction involved a crime of violence and

11  the trial court found that petitioner had suffered prior convictions for battery resulting in serious

12  bodily injury and robbery.  Although petitioner had not previously been sentenced to state prison,

13  his prior criminal history had resulted in periods of detention at juvenile hall followed by a

14  county jail term and a return to county jail within four months of his release.  Under these

15  circumstances, the state courts' rejection of petitioner's Eighth Amendment claim was neither

16  contrary to, nor an unreasonable application of clearly established federal law.  This claim for

17  relief should therefore be denied.

18          C.  Ineffective Assistance of Counsel

19          Petitioner claims that his trial and appellate counsel rendered ineffective

20  assistance.  After setting forth the applicable legal principles, the court will evaluate these claims

21  in turn below.

22          1.  Legal Standards

23          The Sixth Amendment guarantees the effective assistance of counsel.  The United

24  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

25  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

26  counsel, a petitioner must first show that, considering all the circumstances, counsel's

1    performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at

2    687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

3    result of reasonable professional judgment, the court must determine whether, in light of all the

4    circumstances, the identified acts or omissions were outside the wide range of professionally

5    competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

6    petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

7    466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

8    counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

9    694.  A reasonable probability is "a probability sufficient to undermine confidence in the

10   outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

11   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

12   deficient before examining the prejudice suffered by the defendant as a result of the alleged

13   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

14   sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

15   (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

16          In assessing an ineffective assistance of counsel claim "[t]here is a strong

17   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

18   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

19   is in addition a strong presumption that counsel "exercised acceptable professional judgment in

20   all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

21   Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

22   of sufficient investigation and preparation to make reasonably informed, reasonably sound

23   judgments."  Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

24          Defense counsel has a "duty to make reasonable investigations or to make a

25   reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at

26   691.  "This includes a duty to . . . investigate and introduce into evidence records that

13

demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).  In this regard, it has been recognized that "the adversarial process will not function normally unless the defense team has done a proper investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing Kimmelman, 477 U.S. at 384).  Therefore, counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).  On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient.  See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74.  A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'" Bragg, 242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).  See also Hayes v. Woodford, 301 F.3d 1054, 1070 (9th Cir. 2002).

        The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

1   professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751

2   (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the

3   ability of counsel to present the client's case in accord with counsel's professional evaluation

4   would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

5   Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

6   is not even particularly good appellate advocacy.") There is, of course, no obligation to raise

7   meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring a

8   showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing

9   to raise a weak issue. See Miller, 882 F.2d at 1434. In order to establish prejudice in this

10  context, petitioner must demonstrate that, but for counsel's errors, he probably would have

11  prevailed on appeal. Id. at 1434 n.9.

12          2. Trial Counsel

13          Petitioner claims that his trial counsel rendered ineffective assistance when he: (a)

14  admitted during his opening statement that petitioner had sexual intercourse with the victim; (b)

15  failed to adequately investigate a defense of intoxication; (c) failed to object to a jury instruction;

16  (d) failed to raise the meritorious defenses of mistake of fact and intoxication; and (e) failed to

17  challenge the jury pool. Petitioner also claims that the cumulative effect of these errors made by

18  his trial counsel constituted ineffective assistance.

19          a. Defense Counsel's Opening Statement

20          During his opening statement to the jury, petitioner's trial counsel conceded that

21  petitioner had sexual intercourse with the victim and that he was guilty of "count one." (RT at

22  142, 144-45.) Petitioner argues that this statement by counsel essentially conceded the

23  prosecution's entire case by "allow[ing] the jury to infer that [petitioner] picked [the victim] up

24  and began drinking with her with the intention of having sex with her." (P&A at 30.)

25  Respondent, on the other hand, argues that defense counsel's strategy of conceding the "foregone

26  conclusion" that petitioner had sexual intercourse with the minor victim was a reasonable tactical

15

1  decision designed to deflect attention from that issue and to focus on the defense theory that

2  petitioner did not commit a burglary because he did not harbor the requisite intent.  (Answer at

3  10-11.)

4          Petitioner raised this claim for the first time in his petition for writ of habeas

5  corpus filed in the California Superior Court.  (Resp't's lodged document No. 14.)  The Superior

6  Court rejected the claim, concluding that trial counsel's concession during his opening statement

7  was arguably "an appropriate tactic, given the state of the evidence at the trial."  (Resp't's lodged

8  document No. 15 at 4.)  This court agrees.

9          Petitioner's challenge to his trial counsel's opening argument is essentially a

10  disagreement with counsel's tactical decision as to how to conduct the defense of this difficult

11  case.  A tactical decision by counsel with which the defendant later disagrees is not a basis for a

12  claim of ineffective assistance of counsel. Raley v. Ylst, 444 F.3d 1085, 1091 (9th Cir. 2006);

13  Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984); United States v. Mayo, 646 F.2d 369, 375

14  (9th Cir. 1981).  Indeed, "[c]ounsel's tactical decisions are 'virtually unchallengeable.'"  Furman

15  v. Wood, 190 F.3d 1002, 1007 (9th Cir. 1999) (citing Strickland, 466 U.S. at 687).

16          In any event, counsel's decision to include this concession in his opening

17  statement was not unreasonable under the facts of this case.  Pursuant to California Penal Code §

18  667.61, a person who is convicted of lewd and lascivious conduct with a minor during the

19  commission of a burglary shall be punished by imprisonment in state prison for life.  The thrust

20  of defense counsel's opening statement was that the evidence would show petitioner did not

21  commit a burglary because he did not harbor the intent to commit a felony at the time he entered

22  the victim's apartment.  (RT at 146-47.)  Counsel's decision to focus on the burglary count,

23  which carried a life sentence, and to concede guilt on the charge that was supported by

24  overwhelming evidence, was an appropriate tactical decision.  The prosecution introduced

25  eyewitness testimony from Dennis Miller that he discovered petitioner in the act of having sexual

26  intercourse with the victim.  (Id. at 169-72.)  A neighbor who followed Mr. Miller into the

victim's bedroom saw petitioner naked "down at least to his knees."  (Id. at 166.)  Under these circumstances, counsel's decision to concede the obvious and focus on that aspect of the case which might give rise to a reasonable doubt in the minds of the jurors was well within the wide range of competent professional assistance.

As noted by the United States Supreme Court, pointing out a client's obvious shortcomings and making reasonable concessions "is precisely the sort of calculated risk that lies at the heart of an advocate's discretion."  Yarborough v. Gentry, 540 U.S. 1, 9 (2003).  See also United States v. Fredman, 390 F.3d 1153, 1154, 1158 (9th Cir. 2004) (defense counsel's decision to admit in opening statement to some of defendant's criminal wrongdoing was consistent with the reasonable and effective defense tactic of conceding weaknesses in defendant's case in an attempt to shift the jury's focus from the strong evidence against defendant to an issue more favorable to defendant, and was a reasonable tactic used by counsel "to avoid diminishing his credibility by arguing a lost cause").

Petitioner has failed to demonstrate that his trial counsel's reasonable tactical concession constituted ineffective assistance.  Accordingly, petitioner is not entitled to relief on this claim.[5]

### b.  Inadequate Investigation of a Potential Intoxication Defense

Petitioner's next claim is that his trial counsel rendered ineffective assistance because he failed to conduct an adequate investigation into an intoxication defense.  Petitioner states that he informed his trial counsel he was "extremely intoxicated on the night of the events" but counsel responded that "he was not willing to call and pay for expert witnesses to testify at petitioner's trial regarding his level of intoxication."  (P&A at 30.)  Petitioner contends that

> a medical expert at Petitioner's trial could have testified to the
> amount of alcohol in Petitioner's system and the effects that this

---

[5]  Because this court concludes that counsel's representation did not fall below an objective standard of reasonableness, the prejudice prong of the Strickland analysis need not be addressed.  United States v. Fredman, 390 F.3d 1153, 1158 (9th Cir. 2004).

1  alcohol would have on Petitioner's state of mind.  A medical
2  expert could have testified that Petitioner was so intoxicated that
   he could not have formed the intent necessary to be convicted of
3  the crimes he was charged with.

4  (Id. at 30-31.)  In support of this claim, petitioner has submitted his own declaration, in which he

5  states that he "had been drinking" prior to meeting the victim.  (Traverse, Ex. D at 1, 2.)

6        This same claim was raised for the first time in petitioner's application of a writ of

7  habeas corpus filed in the California Superior Court.  The Superior Court rejected the claim,

8  noting the lack of specific evidence in the record indicating that petitioner's trial counsel had

9  refused to retain an expert witness.  (Resp't's lodged document No. 15 at 2.)  The Superior Court

10  also concluded that the evidence at trial demonstrated petitioner became significantly intoxicated

11  only after he and the victim began drinking in the victim's apartment.  (Id. at 2-3.)

12        This undersigned agrees that petitioner has failed to demonstrate his trial counsel

13  rendered ineffective assistance by failing to call an expert witness to testify regarding petitioner's

14  intoxication.  Petitioner has failed to establish either the availability of such an expert or the

15  substance of any testimony such an expert would have given.  See Villafuerte v. Stewart, 111

16  F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim denied where he presented

17  no evidence concerning what counsel would have found had he investigated further, or what

18  lengthier preparation would have accomplished); United States v. Harden, 846 F.2d 1229, 1231-

19  32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where,

20  among other things, there was no evidence in the record that the witness would have testified);

21  United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice

22  prong of ineffectiveness claim because he offered no indication of what potential witnesses

23  would have testified to or how their testimony might have changed the outcome of the hearing).

24  Petitioner's unsupported claim that an expert could have testified that petitioner lacked the

25  requisite intent and his vague assertion that he "had been drinking" prior to meeting the victim

26  are insufficient to establish that defense counsel was deficient in failing to investigate an

18

1  intoxication defense.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of

2  conclusory allegations unsupported by specifics is subject to summary dismissal"); Jones v.

3  Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by

4  a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20,

5  26 (9th Cir. 1994)).  In this regard, petitioner has failed to demonstrate either substandard

6  performance by counsel or prejudice.  Accordingly, he is not entitled to relief on this claim.

7              c.  Failure to Assert a Mistake of Fact Defense

8              Petitioner claims that his trial counsel rendered ineffective assistance in failing to

9  assert a "mistake of fact" defense to the burglary charge.  Petitioner explains the nature of this

10 claim as follows:

11              To be convicted of burglary, it must be shown that the defendant
              willfully entered a dwelling with the intent to commit a felony.
12             However, since Petitioner was under a mistake of fact of the
              victim's age, he did not willfully enter the house to commit a lewd
13             and lascivious act on a minor under the age of fourteen.  Petitioner
              asserts that his mistake of fact negated the intent necessary to be
14             convicted of burglary.

15 ( P&A at 32.)

16             This claim fails because  mistake of fact is not an available defense to a charge of

17 lewd and lascivious conduct with a child under the age of fourteen years.  People v. Olsen, 36

18 Cal. 3d 638, 647 (1984) (reasonable mistake of age is not a defense to a California Penal Code §

19 288 charge of lewd and lascivious conduct with a child under the age of fourteen); see also

20 Morissette v. United States, 342 U.S. 246 n.8 (1952) (noting that although a finding of intent is

21 usually required in order for criminal liability to be imposed, exceptions include "sex offenses,

22 such as rape, in which the victim's actual age was determinative despite defendant's reasonable

23 belief that the girl had reached age of consent").  Accordingly, trial counsel had no viable

24 argument that petitioner did not intend to commit a felony at the time he entered the victim's

25 apartment because he mistakenly believed she was over the age of fourteen.  Counsel's failure to

26 make a meritless argument does not constitute ineffective assistance.  Jones v. Smith, 231 F.3d

1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). See

also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can

never be deficient performance").

d.  Failure to Object to CALJIC No. 2.50.1

Petitioner next claims that his trial counsel rendered ineffective assistance because

he failed to object to the giving of California Jury Instruction (CALJIC) No. 2.50.1 with respect

to the evidence of his 1993 sexual conduct involving Crystal B.[6]  Petitioner argues that there was

insufficient evidence introduced at his trial to prove he committed the prior acts because he

"never went to trial on this accusation and never served any time in prison for it."  (P&A at 31.)

Petitioner contends, in other words, that a conviction was necessary for the evidence of his prior

conduct in 1993 with Crystal B. to be admissible.  In the same vein, petitioner objects to the

language contained in CALJIC No. 2.50.1 instructing the jury that in order to be considered, the

prior crimes need be proven only by a preponderance of the evidence as opposed to beyond a

reasonable doubt.  Petitioner argues that his trial counsel's failure to object to CALJIC No. 2.50.1

allowed the jury to consider the prejudicial evidence concerning his contact with Crystal B in

1993.  He argues, "it is more likely that the jury convicted Petitioner because of this last alleged

crime that they should have not have even been able to consider."  (Id.)

On appeal of his conviction, petitioner argued that admission of evidence

concerning his 1993 acts involving Crystal B. "was reversible error because there were

insufficient similarities between the charged and uncharged assaults to establish either intent or

---

[6]  Petitioner's jury was instructed with CALJIC No. 2.50.1, which provides as follows:

Within the meaning of the preceding instruction the prosecution
has the burden of proving by a preponderance of the evidence that
a defendant committed a crime other than that for which he is on
trial.  You must not consider this evidence for any purpose unless
you find by a preponderance of the evidence that a defendant
committed such other crime.

(Clerk's Transcript on Appeal (CT) at 234; RT at 384.)

common scheme or plan, and the prejudicial effect substantially outweighed any probative

value." (Resp't's lodged document No. 5 at 13.)  The state appellate court concluded that the

evidence relating to the 1993 incident was properly admitted because those prior acts were

substantially similar to the charged acts and were relevant to demonstrate petitioner's intent in

entering the victim's apartment.  (Id. at 13-16.)[7]

       Petitioner's claim of ineffective assistance of counsel was raised for the first time

in his application for a writ of habeas corpus filed in the California Superior Court.  (Resp't's

lodged document No. 14.)  The Superior Court rejected the claim on the ground that the

California Court of Appeal had earlier rejected petitioner's challenges to the admissibility of

Crystal B.'s testimony.  (Id. at 4.)

       This court also rejects petitioner's challenges to the admissibility of evidence of

his prior bad acts.  As explained by the California Court of Appeal, the testimony of Crystal B.

/////

/////

/////

/////

/////

---

[7] In this regard, the state appellate court explained that:

> Prior to trial, the prosecutor sought to have Crystal's testimony
> relating defendant's sexual assault upon her admitted for the
> purpose of proving that his intent when he entered LeeAnn's
> apartment was to have sex with her, thereby establishing the
> burglary charge and the enhancement under section 667.61.  In a
> hearing outside the presence of the jury, Crystal testified essentially
> as she did at trial.  Following argument, the trial court concluded
> the evidence's probative value outweighed its prejudicial effect and
> was admissible under Evidence Code sections 1108 and 1101,
> subdivision (b).

(Id. at 13.)  At trial, the prosecutor "elected to forego the uncharged conduct coming in under
Evidence Code section 1108."  (Id. at 14 n.4.)  Accordingly, the evidence of petitioner's actions
against Crystal B. was admitted solely pursuant to California Evidence Code § 1101(b).

was sufficient to support the admissibility of this evidence under California Evidence Code § 1101(b).[8]  Contrary to petitioner's argument, a conviction on proof beyond a reasonable doubt is not required for evidence to be admitted pursuant to this code section.  See People v. Carpenter, 15 Cal. 4th 312, 382 (1997) (preponderance of the evidence standard reaffirmed and approved).[9]

Petitioner is also incorrect in asserting that it was his trial counsel's failure to challenge the giving of CALJIC No. 2.50.1 that permitted the jury to consider the prior acts evidence.  In fact, as explained by the California Court of Appeal, petitioner's counsel did object to the admissibility of evidence of petitioner's prior acts against Crystal B.  (Opinion at 13.)  His objections were overruled by the trial court.  (Id.)  Under these circumstances, trial counsel's failure to challenge the jury instruction itself did not result in the admission of this evidence.

For the foregoing reasons, the state courts' rejection of petitioner's claim that his trial counsel rendered ineffective assistance in failing to object to the giving of CALJIC No. 2.50.1 is not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to relief on this claim.

---

[8]  California Evidence Code § 1101(b) allows the introduction of evidence

> that a person committed a *crime, civil wrong, or other act* when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.  (emphasis added.)

[9]  In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), the petitioner claimed that the use at his trial of CALJIC Nos. 2.50.01 and 2.50.1 had unconstitutionally permitted the jury to find him guilty of the charged offenses based on a mere preponderance of the evidence.  387 F.3d at 818.  The United States Court of Appeals for the Ninth Circuit agreed, holding that CALJIC No. 2.50.01 and CALJIC No. 2.50.1, when given together at a criminal trial, violated the defendant's Fourteenth Amendment due process right to be proven guilty beyond a reasonable doubt.  Id. at 822 ("the interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence").  Petitioner's jurors were instructed only with CALJIC No. 2.50.1, and did not receive CALJIC No. 2.50.01.  Accordingly, Gibson has no applicability here.

1           e. <u>Failure to Object to the Jury Pool</u>

2           Citing <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), petitioner claims that his trial

3  attorney rendered ineffective assistance when he failed to object to the racial composition of the

4  jury.  (P&A at 24-28, 34.)  Petitioner argues, "if the prosecution uses its peremptory strikes

5  during jury selection in a purposefully race-based discriminatory way, . . . a defendant's right to

6   equal protection is violated."  (<u>Id.</u> at 24.)  Petitioner states that, while he is African-American,

7  the jurors at his trial were all "Caucasian and Asian."  (<u>Id.</u> at 34.)  He argues that the absence of

8  blacks from his jury created a prima facie case of racial discrimination in jury selection and that

9  his trial counsel should have "object[ed], raise[d] this legal issue, and demand[ed] an explanation

10  from the prosecution."  (<u>Id.</u> at 28.)  In support of this claim, petitioner has filed the declaration of

11  Michael Gray, a pastor of Trinity Restoration Ministries, who states that: (1) at the time of

12  petitioner's trial there was "an ample and abundant supply of Blacks, residing within Yuba

13  County that were eligible and qualified to serve as jurors;" (2) the trial court and the prosecutor

14  violated petitioner's constitutional rights "by removal of all Black venire men from the selected

15  jury pool;" (3) black persons in Yuba County "were systematically and purposefully excluded

16  from jury duty;" and (4) the prosecutor and the trial judge used procedures to "exclud[e] all

17  blacks from acting as jurors."  (Traverse, Ex. F ("corrected copy").)  Petitioner has also filed the

18  declaration of Mary Acosta, a member of his jury, who states that there were African-Americans

19  in the jury pool but they were all "dismissed."  (Traverse, Ex. G.)

20           Petitioner's claim in this regard was raised for the first time in his application for

21  a writ of habeas corpus filed in the California Superior Court.  (Resp't's lodged document No.

22  14.)  Petitioner argued, as he does here, that the mere fact there were no African-Americans on

23  his jury gave rise to a prima facie case of racial discrimination in jury selection to which his trial

24  counsel should have objected.  (<u>Id.</u> at 27.)  (Resp't's lodged document No. 15 at 3-4.)  The

25  Superior Court rejected this argument with the following explanation:

26  /////

1    The Court takes judicial notice on its own motion of the State of
     California, Department of Finance, Race/Ethnic Population
2    Estimates: Components of Change for California Counties, April,
     1990 to July, 1999, Sacramento, California, March, 2001.  This
3    study refers to the relevant ethnic groups as "whites," "blacks," and
     "Asian/Pacific Islanders," respectively.  Yuba County during the
4    period of the study had a 74% white population, 4% black, and 8%
     Asian/Pacific Islander.  Such being the case, there are relatively
5    few blacks in the jury pool, and the absence of blacks from a given
     jury can hardly be surprising, let alone give rise to a prima facie
6    showing of Fourteenth Amendment violation.  Beyond the quoted
     passage, the petition and its supporting documentation state
7    absolutely no facts whatsoever supportive of the notion that there
     was is [sic] even an arguable, let alone prima facie, race-based
8    Fourteenth Amendment violation in defendant's trial, viz., that
     blacks were "excluded" from the jury.  The Court therefore **denies**
9    relief based on this ground.

10   (Id. at 3-4.)[10]

11          In Batson, the United States Supreme Court held that the Equal Protection Clause

12   prohibits a prosecutor from exercising peremptory challenges to strike a venire person on the

13   basis of race.  In order to prevail on a so-called Batson claim, petitioner must first establish a

14   prima facie case of purposeful discrimination.  476 U.S. at 96-97; Lewis v. Lewis; 321 F.3d 824,

15   830 & n.18 (9th Cir. 2003); United States v. DeGross, 960 F.2d 1433, 1442 (9th Cir. 1992) (en

16   banc).  "To establish a prima facie case, the defendant must show that 'he is a member of a

17   cognizable racial group,' Batson, 476 U.S. at 96, and that "the totality of the relevant facts gives

18   rise to an inference of discriminatory purpose."  Williams v. Runnels,  432 F.3d 1102, 1106 (9th

19   Cir. 2006) (quoting Batson, 475 U.S. at 93-94).  See also McClain v. Prunty, 217 F.3d 1209,

20   1219-20 (9th Cir. 2000).  A defendant may establish a prima facie case "by producing evidence

21   sufficient to permit the trial judge to draw an inference that discrimination has occurred."

22   Runnels, 432 F.3d at 1106.  (citation omitted).

23          Petitioner has failed to substantiate his claim that his trial counsel rendered

24   ineffective assistance in failing to raise a Batson challenge.  There are no facts in this record that

25   _____

26   [10]  Petitioner has included a copy of the census report cited by the California Superior
     Court as Exhibit I to his traverse.

24

1   raise any inference that the prosecutor used peremptory challenges to exclude any potential juror

2   on account of his or her race.  Although "a defendant can make a prima facie showing based on a

3   statistical disparity alone," Runnels, 432 F.3d at 1107, there is no evidence in this record from

4   which this court can even make a statistical analysis of the jury selection process at petitioner's

5   trial.  Neither the vague statements of Mr. Gray and Ms. Acosta, nor the census report  lodged by

6   petitioner and cited by the California Superior Court, support an inference of racial

7   discrimination in the prosecutor's exercise of peremptory challenges.  Although petitioner claims

8   that trial counsel "effectively waived" any objection to the composition of the jury, he does not

9   explain what his trial counsel should have done or what he failed to do.  Petitioner's conclusory

10  allegations, which are not supported by a statement of specific facts, do not warrant habeas relief.

11  James, 24 F.3d at 26.  The decision of the California Superior Court that there was no factual

12  basis in the record to support an inference of purposeful discrimination in jury selection is not

13  contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled

14  to relief on this claim.[11]

15              f.  Cumulative Effect of Trial Counsel's Errors

16              Petitioner claims that the cumulative effect of errors by his trial counsel

17  constituted ineffective assistance of counsel even if no error rose to the level of a constitutional

18  violation standing alone.  (P&A at 34.)  Where the cumulative effect of errors is so prejudicial

19  that a defendant is denied a fair trial, habeas relief may be warranted.  See United States v.

20  Necoechea, 986 F.2d 1273, 1282-83 (9th Cir. 1993).  Petitioner has not established a denial of

21  due process with respect to any of his individual claims of ineffective assistance of trial counsel.

22

23           [11]  Petitioner does not appear to be claiming that he was denied his Sixth and Fourteenth
     Amendment right to a jury selected from a fair cross-section of the community.  Accordingly, the
24   court will not address any such claim.  Even if petitioner had made such a claim, it would be
     properly rejected.  There is no evidence before this court that the representation of African-
25   Americans in venires from which juries are selected in Yuba County is not fair and reasonable in
     relation to the number of such persons in the community, or that any underrepresentation is due
26   to a systematic exclusion of African-Americans in the jury-selection process.  See Duren v.
     Missouri, 439 U.S. 357, 364 (1979).

                                                25

1    Likewise, considered in their aggregate, those claims do not compel the finding of a due process

2    violation.  Accordingly, he is not entitled to relief with respect to this claim.

3                    3.  Appellate Counsel

4                    Petitioner claims that his appellate counsel rendered ineffective assistance when

5    she failed to raise on appeal all of the claims contained in the instant habeas petition.  Petitioner

6    argues that his appellate counsel:

7                    had many arguable issues before her that she did not present or
                     argue.  Arguably, these issues would have resulted in a reversal of
8                    petitioner's conviction.  Thus, appellate counsel failed abjectly in
                     her duty to represent her client zealously.
9

10   (P&A at 37.)

11                   Petitioner's appellate counsel apparently reviewed the trial transcripts and

12   concluded that petitioner's claims of ineffective assistance of trial counsel and sufficiency of the

13   evidence, which were not raised on direct appeal, lacked merit.  As described above, this court

14   has reached the same conclusion.  Appellate counsel's decision to press only claims with

15   arguably more merit was "within the range of competence demanded of attorneys in criminal

16   cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).  The California Superior Court

17   denied this claim on the ground that petitioner had failed to demonstrate prejudice stemming

18   from any of appellate counsel's alleged errors.  (Resp't's lodged document No. 14 at 4.)  This

19   determination is not contrary to, or an unreasonable application of Strickland.  Accordingly,

20   petitioner is not entitled to relief on this claim.

21                   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

22   application for a writ of habeas corpus be denied.

23                   These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25   days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 8, 2006.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
fountain2350.hc

27